THE AMERICAN EMIGRANT Co. v. THE C., R. I. & P. R. Co.

1. **Public Lands: RAILROAD GRANT.** Until the line of railroad is definitely fixed to which a grant of alternate sections of land on either side has been made, the title to any particular section does not vest in the company, the grant being in the nature of a float previous to the permanent location of the line.

2. ———: SWAMP LAND GRANT. Under the act of Congress of March 3, 1857, confirming and approving the selections of swamp lands which had been theretofore made and reported to the general land office, the title to all lands which had been so selected, and which remained vacant, vested absolutely in the State, whether the same were or were not actually swamp. Following *Fremont and Mills Counties v. The B. & M. R. R. Co.,* 22 Iowa, 91.

*Appeal from Cass District Court.*

SATURDAY, DECEMBER 15.

THE plaintiff brought this action claiming title to certain lands in Cass county. Its title is based upon two acts of Congress, one of September 28, 1850, and the other of March 3, 1857. The defendant claims title through an act of Congress of May 15, 1856, and an act of the legislature of the State of

Iowa of July 14, 1856. There was a decree for the plaintiff in the court below, and defendant appeals.

*T. F. Withrow* and *Wright, Gatch & Wright*, for appellant.

*Harvey & Lehman*, for appellee.

ROTHROCK, J.— I. The question to be determined in this case is whether the title to the lands in controversy vested in the county of Cass, the plaintiff's grantor, under what is known as the swamp land laws, or in the defendant, as railroad lands, under the acts of Congress and the General Assembly of this State.

The opinion of this court in the case of *Fremont and Mills Counties v. The B. & M. R. R. Co.*, 22 Iowa, 91, contains an elaborate history of the legislation upon the subject of swamp land and railroad land grants. It is not necessary to repeat in detail the legislation there referred to. A reference to the opinion is sufficient.

The act of Congress of March 3, 1857, provided: "That the selection of swamp and overflowed lands granted to the several states by the act of Congress, approved September 28, 1850, \* \* \* and the act of the 2d of March, 1849, \* \* \* heretofore made and reported to the commissioner of the general land office, *so far as the same shall remain vacant and unappropriated*, and not interfered with under an actual settlement, under any existing law of the United States, be and the same are hereby confirmed, and shall be approved and patented to the several states, in conformity with the provisions of the act aforesaid, as soon as may be practicable after the passage of this law."

It is urged by counsel for appellant that the land in controversy was appropriated to the use of the State, to aid in the construction of railways, because the line of the railroad was definitely fixed prior to the passage of the act above cited.

1. PUBLIC lands: railroad grant.

It was held in *Railroad Company v. Fremont County*, 9 Wal., 89, "that until the line of the railroad was definitely fixed upon the ground, there could be no certainty as to the

particular sections of land falling within the grant, nor could the title to any particular section on the line of the road vest in the company. The grant was in the nature of a float until this line was permanently fixed."

It follows that if the line of defendant's road was not definitely fixed prior to the passage of the act of March 3, 1857, there was no appropriation of the land before that time under the railroad grant.

An examination of the evidence satisfies us that the line of defendant's road was not definitely fixed until after that time. This evidence we need not set forth or discuss.

II. The remaining question in the case is, was the title to the lands in controversy vested in the county of Cass by said act of March 3, 1857.

2. ——: swamp land grant.

They were selected as swamp lands by the county agent between the 28th day of August and the 5th day of November, 1855. The list of selections, properly verified, was reported to the State land office, and after being recorded in that office was transmitted by the register to the surveyor-general on the first day of January, 1856. On the 8th day of January, 1857, the surveyor-general attached to said list his written certificate deciding that the lands were swamp and overflowed lands. Four days afterwards he reported the same to the commissioner of the general land office, and at the same time sent a duplicate copy of the list to the local land office at Council Bluffs. On the 22d day of January, 1857, the commissioner of the general land office acknowledged the receipt of the list. It was also received at the land office at Council Bluffs and marked on the books of the office as swamp lands, and the lands were withdrawn from sale.

It will be seen that substantially the same proof was made in *Fremont and Mills Counties v. B. & M. R. R. Co.*, *supra.* One of the lists of lands in controversy in that case was filed in the general land office January 27, 1857.

Following that case we hold the title to these lands was confirmed in the plaintiff's grantor by the act of March 3, 1857, without regard to whether they were swamp and overflowed, or dry and susceptible of cultivation without drainage.

AFFIRMED.